UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THOMAS NEWSOME, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:21-cv-00041 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| BILL B. LEE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Thomas Newsome filed a pro se Complaint against Tennessee Governor Bill B. Lee, Tennessee Bureau of Investigation ("TBI") Director David B. Rausch, the State of Tennessee, the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro"), and John and Jane Does. (Doc. No. 1.) Plaintiff also filed an application to proceed as a pauper. (Doc. No. 6.) The case is before the Court for a ruling on the application and initial review of the Complaint.

### APPLICATION FOR LEAVE TO PROCEED AS A PAUPER

The Court may authorize a person to file a civil suit without paying the filing fee. 28 U.S.C. § 1915(a). According to the application, Plaintiff is 66 years old, disabled, and receives a small monthly income that is exceeded by basic expenses. (*See* Doc. No. 6.) Furthermore, he reports no significant discretionary expenses, cash reserves, or assets. (*Id*. at 2-3.) Accordingly, the Court finds that Plaintiff cannot pay the full civil filing fee in advance without undue hardship. The application will be granted.

**INITIAL REVIEW OF THE COMPLAINT**

Pursuant to statute, the Court must conduct an initial review and dismiss any complaint filed in forma pauperis if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e).").

A. <u>STANDARD OF REVIEW</u>

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Even under this lenient standard, however, pro se plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) (explaining the role of courts is not "to ferret out the strongest cause of action on behalf of pro se litigants" or to "advis[e] litigants as to what legal theories they should pursue").

In reviewing the Complaint, the Court applies the standard for Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court "must (1) view the Complaint in the light most favorable to Plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The Court must then consider whether those factual allegations "plausibly suggest an entitlement to relief,"

*Williams*, 631 F.3d at 383 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)), that rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept as true "unwarranted factual inferences," *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)), and "legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

B. <u>FACTUAL ALLEGATIONS</u>

Liberally construing the Complaint, Plaintiff makes the following factual allegations.[1] In 1988, Plaintiff, a Black man, was convicted of aggravated rape and aggravated kidnapping in Davidson County, Tennessee. (Doc. No. 1 at 4.) Despite maintaining his innocence, Plaintiff received an effective custodial sentence of 55 years. (*Id.*) In January 2019, Plaintiff was paroled after serving 33 years. (*Id.*) He was told to report to the Tennessee Department of Correction ("TDOC") to register as a sex offender. (*Id.*) Upon reporting, Barbara Kay of the TDOC and her husband examined Plaintiff in a hotel room. (*Id.* at 6.)

In February 2020, Plaintiff wrote to TBI asking to be removed from the sex offender registry ("SOR"). (*Id.* at 5.) In June 2020, TBI denied Plaintiff's request on the ground that Tennessee law imposes lifetime registration and monitoring requirements upon persons convicted of a sexually violent offense. (*Id.*) TBI informed Plaintiff that it would not respond to further requests for removal unless Plaintiff's convictions were overturned or he received exoneration. (*Id.*) Accordingly, Plaintiff is not eligible for removal from the SOR and must register for life while living in Tennessee. (*Id.*)

---

[1] Much of the Complaint, including many paragraphs of legalese, appears to be copied from the complaint in a similar case pending before Chief Judge Crenshaw. *See Brown v. Lee*, Case No. 3:20-cv-00916 (Doc. No. 1.)

Plaintiff alleges that placement on the SOR has resulted in denial of employment and housing. (*Id*. at 6.) He also asserts that the SOR is discriminatory and that his registration resulted from systemic racial discrimination against Black men. (*Id*.)

C. ANALYSIS

The Court construes the Complaint to assert claims under 42 U.S.C. § 1983 and the Tennessee Constitution. The Section 1983 claims are several as-applied federal constitutional challenges to the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004, Tenn. Code Ann. §§ 40-39-201 - 40-39-218 ("SORA").[2] And the Tennessee constitutional claim is a state Ex Post Facto challenge to SORA. These claims are discussed below.

1. Other Statutes Referenced in the Complaint

As a threshold matter, the first page of the Complaint cites several statutes – 42 U.S.C. § 1985 and 38 U.S.C. §§ 511(a) and 5301 – that are not referenced again in the Complaint. That is inadequate to plausibly suggest an entitlement to relief that rises above the speculative level. *Williams*, 631 F.3d at 383; *Twombly*, 550 U.S. at 555; *see also Brown v. Mastauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out

---

[2] "In an as-applied challenge, the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997) (quoting *Ada v. Guam Soc'y of Obstetricians and Gynecologists*, 506 U.S. 1011, 1012 (1992) (Scalia, J., dissenting)). By contrast, a plaintiff that challenges a law "on its face" attempts "to invalidate the law in each of its applications, to take the law off the books completely." *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 691 (6th Cir. 2015) (quoting *Speet v. Schuette*, 726 F.3d 867, 871 (6th Cir. 2013)). Facial challenges are disfavored when an as-applied challenge is also made. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Here, the gravamen of the Complaint is the claim that SORA is invalid in the fact-specific context of its application to Plaintiff, and Plaintiff seeks relief pertaining only to himself. (*See* Doc. No. 1.) Moreover, Plaintiff has not given any indication that he seeks to "challenge all retroactive applications of SORA." *See Doe #1 v. Lee*, No. 3:16-cv-02862, 2021 WL 428967, at *12 (M.D. Tenn. Feb. 8, 2021). Accordingly, the Court does not at this time view the Complaint as asserting that SORA should be stricken completely as facially unconstitutional. *See Warshak v. United States*, 532 F.3d 521, 529 (6th Cir. 2008).

4

in his pleading."). Even if Plaintiff intended to invoke these provisions, moreover, the claims are implausible. Sections 511(a) and 5301 exclusively concern veteran's benefits, and Plaintiff has made no allegations concerning that subject. *See Brown v. Lee*, No. 3:20-cv-00916, 2020 WL 7864252, at *2 (M.D. Tenn. Dec. 30, 2020) (dismissing claims under Sections 511(a) and 5301 because plaintiff challenging SORA did not make any allegations concerning veteran's benefits). Section 1985 concerns a conspiracy to commit racial discrimination. While Plaintiff has alleged that the SOR is discriminatory, he has not alleged that the Defendants in this case conspired with one another – *i.e.,* acted *together* with the *purpose* of racial discrimination. *See, e.g., id*. at 2 (dismissing claim under Section 1985 because the plaintiff alleged that the SOR is racially discriminatory, but did not allege that the defendants "shared a common discriminatory objective") (quoting *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 367-68 (6th Cir. 2012)); *Hancock v. Miller*, No. 2:19-CV-00060, 2020 WL 1493609, at *5 (M.D. Tenn. Mar. 27, 2020) (dismissing Section 1985 claim because the complaint did not allege "that any [d]efendant was motivated by class-based animus . . . let alone that all [d]efendants shared that motivation"), *aff'd*, No. 20-5422, 2021 WL 1157843 (6th Cir. Mar. 26, 2021). Accordingly, these claims must be dismissed for failure to state a claim.

2. Section 1983 Claims

Plaintiff claims that SORA violates the Ex Post Facto Clause and the First, Fourth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution. He brings these claims, under 42 U.S.C. § 1983, against Metro, the State of Tennessee, and Governor Lee and TBI Director Rausch in their individual and official capacities.[3] Section 1983 creates a cause of action

---

[3] These claims are timely because "plaintiffs challenging the constitutionality of the [SORA] as applied to them may rely on "a 'continuing violation' theory of when their causes of action accrued." *Brown*, 2020 WL 7864252, at *4 n.6 (quoting *Burns v. Helper*, No. 3:18-CV-01231, 2019 WL 5987707 (M.D. Tenn.

5

against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

    a. Metro

Metro is subject to suit under Section 1983. *See Hadrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978)). However, Metro does not have vicarious liability under Section 1983 for the actions of its employees. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rather, Plaintiff must plausibly allege: (1) that he suffered a constitutional violation; and (2) that a policy or custom of Metro directly caused the violation. *See Hadrick*, 876 F.3d at 243 (citing *Monell*, 436 U.S. at 690-92).

Two judges of this Court have concluded that Metro may be subject to municipal liability in the context of an as-applied constitutional challenge to SORA. *Brown*, 2020 WL 7864252, at *4; *Jordan v. William*, No. 3:19-CV-00907, 2020 WL 4676477, at *11 (M.D. Tenn. Aug. 12, 2020); *Reid v. Lee*, No. 3:20-CV-00050, 2020 WL 4501457, at *11 (M.D. Tenn. Aug. 5, 2020). Those judges also agreed that the key question is whether a plaintiff has adequately asserted that his constitutional injury is the result of a "conscious decision of a Metro policymaker" concerning whether and how to enforce SORA. *Brown*, 2020 WL 7864252, at *4; *Jordan*, 2020 WL 4676477, at *11; *Reid*, 2020 WL 4501457, at *11. Here, however, the Complaint is entirely devoid of

---

Oct. 24, 2019), *report and recommendation adopted*, No. 3:18-CV-01231, 2019 WL 5964546 (M.D. Tenn. Nov. 13, 2019); *Doe v. Haslam*, Nos. 3:16-cv-02862, 3:17-cv-00264, 2017 WL 5187117, at *11 (M.D. Tenn. Nov. 9, 2017).

6

allegations concerning Metro officials (policymakers or otherwise). Indeed, the Complaint alleges that Plaintiff was diverted away from registering with Metro officials in favor of TDOC. Plaintiff thus falls well short of the mark necessary to maintain plausible municipal liability claims against Metro. *Compare with Jordan*, 2020 WL 4676477, at *11 (describing allegations in the complaint of a conscious decision by Metro policymakers to amend the duties of the Metro-Nashville Police Department Sex Crimes Unit to include "responsibility for" offender registration, offender compliance, and coordination of enforcement actions, from which the court concluded it may infer an intention "not to except offenders with pre-registry crimes from enforcement"). Accordingly, Plaintiff's Section 1983 claims against Metro must be dismissed for failure to state a claim.

b. State of Tennessee

Plaintiff's Section 1983 claims against the State of Tennessee must be dismissed due to sovereign immunity. Each state possesses certain immunities from suit that "flow from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc). Consequently, the State of Tennessee generally has sovereign immunity from suit in federal court. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Boler v. Earley*, 865 F.3d 391, 409-10 (6th Cir. 2017) (citing *Ernst*, 427 F.3d at 358).

"There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), applies." *Boler*, 865 F.3d at 410 (citing *Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016)). None of these exceptions apply here, because the State of Tennessee has not consented to this suit, "Section 1983 does not abrogate Eleventh Amendment immunity," *id*. (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)), and "[t]he *Ex Parte Young*

doctrine applies [only] when the lawsuit involves an action against state officials, not against the state itself." *Puckett*, 833 F.3d at 598 (citing *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008)). Accordingly, Plaintiff's Section 1983 claims against the State of Tennessee must be dismissed without prejudice for lack of jurisdiction. *See Brown*, 2020 WL 7864252, at *5 (dismissing Section 1983 SORA challenge against State of Tennessee on sovereign immunity grounds); *Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) ("Dismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice.").

### c. Individual-Capacity Claims Against Governor Lee and Director Rausch

Next, Plaintiff sues Governor Lee and Director Rausch in their respective individual capacities. "Persons sued in their individual capacities under [Section] 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012); *see also Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish [S]ection 1983 liability.").That is, because there is no *respondeat superior* liability under Section 1983, a supervisory official is not liable in his or her individual capacity unless he or she "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hall v. Trump*, No. 3:19-cv-00628, 2020 WL 1061885, at *5 (M.D. Tenn. Mar. 5, 2020) (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).

Here, the Complaint contains no allegation that either Governor Lee or Director Rausch was personally involved in violating Plaintiffs (or anyone's) constitutional rights. (*See* Doc. No. 1.) For example, Plaintiff does not allege that Governor Lee or Director Rausch personally participated in the development or implementation of SORA, the placement of Plaintiff on the

SOR, the enforcement of SORA against Plaintiff, or the refusal to remove Plaintiff from the SOR. (*Id.*) Nor does the Complaint allege that Governor Lee or Director Rausch personally encouraged others to engage in unconstitutional behavior against Plaintiff. (*Id.*) That Governor Lee or Director Rausch hold attenuated supervisory positions over those charged with implementing SORA is insufficient to plausibly suggest that either is individually liable under Section 1983. Accordingly, the individual-capacity Section 1983 claims against Governor Lee and Director Rausch must be dismissed for failure to state a claim.

### d. Official-Capacity Claims Against Governor Lee and TBI Director Rausch

Plaintiff also sues Governor Lee and Director Rausch in their official capacities. To the extent that these claims are for money damages (*see* Doc. No. 1 at 14-15), Governor Lee and Director Rausch stand in the shoes of the state and thus are protected by Tennessee's sovereign immunity. *Ernst*, 427 F.3d at 358; *Boler*, 865 F.3d at 410. Accordingly, Plaintiff's official-capacity Section 1983 claims for money damages must be dismissed without prejudice for lack of subject-matter jurisdiction. *See Brown*, 2020 WL 7864252, at *6 (dismissing SORA-registrant's official-capacity claims for money damages based on sovereign immunity).

Plaintiff also brings official-capacity claims against Governor Lee and Director Rausch for prospective injunctive relief, most notably Plaintiff's court-ordered release from SORA registration requirements. (*See* Doc. No. 1 at 14.) Tennessee's sovereign immunity does not provide a shield from these claims for individual defendants sued in their official-capacity. *Ernst*, 427 F.3d at 358-59 (citing *Ex Parte Young*, 209 U.S. at 155-56). Accordingly, the Court considers whether Plaintiff states a colorable claim in this context. *Brown*, 2020 WL 7864252, at *6; *see also Haslam*, 2017 WL 5187117, at *9-10 (holding that both the Tennessee Governor and TBI

9

Director are appropriate defendants to official-capacity claims for prospective injunctive relief based on constitutional challenges to SORA).

First, Plaintiff does not state a colorable claim based on the Ninth Amendment. The Court of Appeals for the Sixth Circuit has expressly held that the Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). Thus, Plaintiff's Ninth Amendment claim must be dismissed "simply because the Ninth Amendment does not guarantee any particular right." *Spencer v. City of Hendersonville*, No. 3:19-CV-00983, 2020 WL 5573769, at *10 (M.D. Tenn. Sept. 17, 2020); *see also Hancock*, 2020 WL 1493609, at *6 (concluding Section 1983 claims based on the Ninth Amendment hold no merit and are not plausible).

Second, the Complaint does not contain any allegations concerning how SORA impacts Plaintiff's First Amendment rights (such as by allegedly regulating speech) or Fourth Amendment rights (such as by allegedly effecting a search or seizure). While the Complaint references "malicious prosecution," which can be the basis for a Section 1983 claim grounded on an alleged Fourth Amendment violation, *see Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010), Plaintiff makes no allegation that he has been prosecuted for any violation of SORA. *See id*. at 308 (explaining that the threshold allegation for a malicious prosecution claim under Section 1983 is that "a criminal prosecution was initiated against the plaintiff"). Accordingly, Plaintiff has not stated a colorable claim based on the First or Fourth Amendments.

Next, the Sixth Amendment guarantees indigent defendants the right to counsel during critical stages of state or federal criminal prosecutions. *Turner v. United States*, 885 F.3d 949, 952 (6th Cir. 2018). The Complaint does not allege that Plaintiff has been prosecuted for violating

10

SORA or denied the right to counsel in any way. Accordingly, Plaintiff's Sixth Amendment claim must be dismissed for failure to state a claim.

Fourth, the Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain. *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1093 (6th Cir. 2019) (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). Plaintiff, however, is a parolee. Parole is a privilege; there is no constitutional or inherent right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The Supreme Court has explained that "probationers do not enjoy the absolute liberty to which every citizen is entitled," *United States v. Knights*, 534 U.S. 112, 119 (2001), and "parolees enjoy even less of the average citizen's absolute liberty than do probationers." *Samson v. California*, 547 U.S. 843, 850 (2006).

This Court has found that SORA imposes punishment upon registrants that may be characterized as punitive. *See Doe #1*, 2021 WL 428967, at *17-30. However, the Complaint does not allege that Plaintiff has suffered any injury from being placed on the SOR other than the loss of housing and employment opportunities. For example, the Complaint does not allege that Plaintiff has been fined or incarcerated for failure to comply with SORA requirements. Plaintiff's alleged injuries therefore do not rise to the level of "wanton" infliction of pain required for an Eighth Amendment violation. *See, e.g., Gebreneguesse v. Heyns*, No. 2:16-CV-12804, 2017 WL 9470792, at *4 (E.D. Mich. Apr. 26, 2017), *report and recommendation adopted*, No. 16-12804, 2017 WL 3224968 (E.D. Mich. July 31, 2017), *aff'd*, No. 17-2055, 2018 WL 4278568 (6th Cir. Apr. 20, 2018), (citing *Johnson v. Owens*, 612 F. App'x 707, 718 (5th Cir. 2015) (concluding that parolee had not stated an Eighth Amendment claim based on requirement to participate in sex offender therapy); *Walp v. Quarterman*, No. 3-08-cv-605, 2008 WL 5099940, at *2 (N.D. Tex.

Dec. 1, 2008) ("[T]he United States Supreme Court has never issued an opinion which holds that the Eighth Amendment can be violated by a prisoner's release on parole.")). Accordingly, Plaintiff's Eighth Amendment claim must be dismissed for failure to state a claim.

Fifth, Plaintiff's Fourteenth Amendment procedural due process claim has been foreclosed by the Supreme Court. *Brown*, 2020 WL 7864252, at *7 (citing *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003) (holding that procedural due process claims against sex offender registration laws that turn on the fact of an individual's conviction for a particular offense are not cognizable because "convicted offender[s] ha[ve] already had a procedurally safeguarded opportunity to contest" the fact of their conviction)). Here, Plaintiff's claim appears to arise from the allegation that he was innocent of the crimes for which he was convicted. Accordingly, the Court must dismiss this claim.

Plaintiff's Fourteenth Amendment substantive due process claim, on the other hand, is inadequately pled. Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). However, "[t]he interests protected by substantive due process are . . . much narrower than those protected by procedural due process." *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003). Substantive due process only "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Guertin*, 912 F.3d at 918 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). Thus, in order to adequately assert a substantive due process claim, a plaintiff must carefully allege "that a statute or government action burdens a fundamental right and cannot withstand strict scrutiny." *Beydoun v. Sessions*, 871 F.3d

12

459, 467 (6th Cir. 2017) (quoting *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006)). To satisfy this test, a plaintiff must carefully allege a government action that, at a minimum, "*significantly* interferes with the exercise of a fundamental right." *Id.* (emphasis in original) (quoting *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978)); *Guertin*, 913 F.3d at 918 (citing *Glucksburg*, 521 U.S. at 721; *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).

Here, the Complaint does not allege that SORA significantly burdens a fundamental right. Plaintiff alleges that he has – on an unknown number of occasions – been denied employment and housing due to SOR-registrant status. While Plaintiff no doubt keenly felt these denials, they do not implicate a fundamental right that triggers strict scrutiny. *See Doe v. Miller*, 405 F.3d 700, 714 (8th Cir. 2005) (reviewing authority and concluding that "the Constitution [does not] establish[ ] a right to "live where you want" that requires strict scrutiny"); *Brown*, 2020 WL 7864252, at *7 (concluding that allegations of being "denied employment opportunity" and "denied housing" due to being placed on the SOR are not deprivations of a protected interest that trigger heightened review) (citing *Haslam*, 2017 WL 4187117, at *16 (collecting cases and explaining that there is no fundamental right to private employment)); *Spangler v. Collins*, No. 2:11-CV-00605, 2012 WL 1340366, at *5 (S.D. Ohio Apr. 16, 2012) (surveying precedent and concluding that sex offender residency restrictions "do not implicate a fundamental right"). Moreover, even if heightened scrutiny were appropriate, Plaintiff has not alleged sufficient facts to support the inference of a "significant," as opposed to incidental, burden. *See Guertin*, 912 F.3d at 918 (plaintiff must adequately demonstrate deprivation of fundamental right); *Beydoun*, 871 F.3d at 468 (incidental burdens do not implicate a fundamental right).

Because strict scrutiny is inapplicable, rational basis review applies to this claim. *Spangler*, 2012 WL 1340366, at *6. Under this lenient standard, a law must be "rationally related to a

13

legitimate governmental purpose." *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (citation omitted). And the law must be upheld if there is "any plausible reason" for its passage, "no matter how unfair, unjust, or unwise," *DeBoer v. Snyder*, 772 F.3d 388, 404 (6th Cir. 2014), *rev'd on other grounds sub nom. Obergefell v. Hodges*, 576 U.S. 644 (2015), without the state needing to present any evidence. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Assuming that the alleged employment or residency denials arose from SORA restrictions attributable to the state, Plaintiff has failed to allege that Tennessee lacked a rational basis for imposing those restrictions. *See Burns*, 2019 WL 5987707, at *7 (concluding substantive due process claim was implausible because plaintiff failed to allege that the state lacked a rational basis for SORA rules). Moreover, numerous courts have concluded that similar sex offender restrictions survive rational basis review because plausible purposes can be articulated. *See, e.g., Miller*, 405 F.3d at 714-16; *Duarte v. City of Lewisville*, 136 F. Supp.3d 752, 785 (E.D. Tex. 2015); *Spangler*, 2012 WL 1340366, at *6 (collecting cases); *Doe v. Baker*, No. 1:05-CV-2265, 2006 WL 905368, at *7 (N.D. Ga. Apr. 5, 2006). Plaintiff has not pleaded any facts that allow the Court to draw the inference that Tennessee did not have "any plausible reason" for enacting SORA employment or residency restrictions. Accordingly, Plaintiff has not stated a colorable substantive due process claim under the Fourteenth Amendment.

Plaintiff has, however, stated a colorable claim under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause commands that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Plaintiff must plausibly allege that Tennessee treated him "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a

14
Case 3:21-cv-00041 Document 7 Filed 04/29/21 Page 14 of 20 PageID #: 48

suspect class, or has no rational basis." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006).

The Sixth Circuit has held that sex offenders are not a suspect class, *Does v. Munoz*, 507 F.3d 961, 966 (6th Cir. 2007), and that Tennessee "has a rational basis for treating sex offenders differently from other offenders." *Id*. (citing *Cutshall v. Sundquist*, 193 F.3d 466, 482-83 (6th Cir. 1999)). However, in *Brown*, Chief Judge Crenshaw recently found that a pro se plaintiff stated an equal protection claim as part of a constitutional challenge to SORA. There, the plaintiff alleged that his placement on the SOR "occurred as part of the systemic racially discriminatory administration of SORA, which results in Black men being placed on the SOR at twice the rate of white men." *Brown*, 2020 WL 7864252, at *7. The court concluded that the plaintiff's equal protection claim was "not based upon mere sex offender status," but on "SORA impermissibly burden[ing] [the plaintiff] as a member of a suspect class." *Id*.

Plaintiff's allegations are similar to those in *Brown*. Specifically, the Complaint alleges that the SOR discriminates against Black men and that, in practice, Black men are placed onto the SOR at twice the rate of others. Taken alone, this allegation lacks heft. However, because this claim alleges disparate treatment of the TDOC prison population, the Court exercises its discretion to take judicial notice of TDOC's 2019 Annual Report. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673 (6th Cir. 2011) (a court has discretion to consider public records integral to a claim). The TDOC 2019 Annual Report indicates that the prison population at the time Plaintiff was placed on the SOR was 56% white and 42% African American.[4] *See* TDOC, ANNUAL REPORT FY 2019,

---

[4] In addition, a comprehensive public study of Tennessee's prison system prepared using public data indicates that, although African-Americans are disproportionately represented in the Tennessee prison population relative to percentage of state population, the overall percentage of the Tennessee prison population comprised of African-Americans has been both declining and lower than the white population for many years. *See The Sycamore Institute*, INCARCERATION IN TENNESSEE: WHO, WHAT, WHERE, WHY,

15

at 6, at https://www.tn.gov/content/dam/tn/correction/documents/AnnualReport2019.pdf. Obviously, African-Americans are present in such population at nowhere double the percentage of white persons. The 2019 entire prison population is admittedly not a perfect measure of the current population of convicted offenders who are (or have been at relevant times in the past) eligible for the SOR. However, this additional fact allows the Court to draw, for purposes of initial review, the reasonable inference that the placement of Black prisoners on the SOR at the double the rate of white prisoners was the result of disparate treatment (with respect to placement decisions in particular) on the basis of race, as opposed the natural result of conviction rates for Black persons or some other non-discriminatory factor(s). Accordingly, the Court applies the reasoning of *Brown* and finds that Complaint has stated, at this very early stage, a colorable claim that SORA impermissibly burdened Plaintiff as a member of a suspect class. Of course, as this case advances, Plaintiff will be required to offer much more evidence to prove this claim. For now, however, the claim may proceed for further development.

Finally, Plaintiff has stated a colorable claim under the Ex Post Facto Clause of the U.S. Constitution. The Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I § 10, cl. 1. The Constitution "does not bar all retroactive lawmaking, but only retroactive punishment." *Does v. Snyder*, 834 F.3d 696, 699 (6th Cir. 2016). The Ex Post Facto Clause "forbids the [legislature] . . . to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *United States v. Kruger*, 838 F.3d 786, 790 (6th Cir. 2016) Two critical elements must be present for a law to fall within the Ex Post Facto prohibition: (1) "it must apply to events occurring before its enactment"; and (2) "it must disadvantage the offender affected by it . . . by

---

AND HOW LONG? (Feb. 14, 2019), available at https://www.sycamoreinstitutetn.org/incarceration-tn-prisoner-trends/.

altering the definition of criminal conduct or increasing the punishment for the crime[.]" *Doe #1*, 2021 WL 428967, at *14 (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (internal citation and quotation marks omitted)); *see also Hill v. Snyder*, 900 F.3d 260, 266 (6th Cir. 2018).

Plaintiff alleges that he was placed on the SOR for a conviction that occurred before SORA became law. He further alleges that SORA is an ongoing imposition of increased punishment that has injured his quality of life. Finally, Plaintiff alleges that state officials refuse to remove him from the SOR during his lifetime. Plaintiff has, therefore, stated a plausible claim under the Ex Post Facto Clause. *See, e.g.*, *Doe #1*, 2021 WL 428967, at *31 (granting summary judgment to plaintiff on as-applied challenge to SORA under the Ex Post Facto Clause); *Brown*, 2020 WL 7864252, at *8 (concluding plaintiff with similar allegations "plausibly alleged that his placement on the SOR violates the Ex Post Facto Clause"); *Jordan*, 2020 WL 4676477, at *4-21 (discussing Ex Post Facto clause in context of SORA and concluding that plaintiff demonstrated likelihood of success on the merits of as-applied challenge); *Doe v. Rausch*, 382 F. Supp. 3d 783, 799-800 (E.D. Tenn. 2019) (granting plaintiff summary judgment on as-applied Ex Post Facto Clause constitutional challenge to 2014 amendments to SORA); *Haslam*, 2017 WL 5187117, at *13-14 (denying motion to dismiss as-applied Ex Post Facto Clause constitutional challenges to SORA). Accordingly, this claim may proceed for further development.

    3. <u>Tennessee Constitution</u>

Plaintiff also seeks relief under the Ex Post Facto Clause of the Tennessee Constitution. The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Supreme Court has indicated

17

that the DJA "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Five factors govern whether a Court should exercise its discretion under the DJA:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata";
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984); *Doe v. Vanderbilt Univ.*, No. 3:18-cv-00569, 2019 WL 4748310, at *11 (M.D. Tenn. Sept. 30, 2019).

Tennessee state constitutional protections "remain on the books and can provide an alternative theory for relief" from the U.S. Constitution. *Nunn v. Tenn. Dep't of Corr.*, 547 S.W.3d 163, 188-89 (Tenn. Ct. App. 2017) (internal quotation marks and citation omitted). In this instance, however, it is the unambiguous holding of the Tennessee Supreme Court that the requirements of SORA do not violate the Ex Post Facto Clause of the Tennessee Constitution because they "are nonpunitive and . . . therefore a collateral consequence of" conviction. *Ward v. State*, 315 S.W.3d 461, 472 (Tenn. 2010). Based on this rationale, SORA "has been upheld in numerous Ex Post Facto challenges." *King v. State*, No. M201800572COAR3CV, 2018 WL 5995701, at *5 (Tenn. Ct. App. Nov. 15, 2018) (citing *Livingston v. State*, No. M2009-01900-COA-R3-CV, 2010 WL 3928634, at *6 (Tenn. Ct. App. Oct. 6, 2010) ("To date, every Ex Post Facto challenge of Tennessee's statutory scheme requiring persons classified as sexual offenders to register with the [SOR] has been rejected.")).

Given the Tennessee courts' clear position, a majority of the *Grand Trunk* factors counsel against exercising jurisdiction over Plaintiff's DJA claim. Addressing the Tennessee Constitution claim would neither settle Plaintiff's controversy nor serve a useful purpose in clarifying the legal relations between Plaintiff and Defendants. Furthermore, it is not this Court's primary role to insert itself unnecessarily into the Tennessee judiciary's conversation about the Tennessee Constitution. *See, e.g.*, *Foley v. State*, No. M201801963CCAR3PC, 2020 WL 957660, at *8 (Tenn. Crim. App. Feb. 27, 2020) (Holloway, Jr., concurring) (suggesting that numerous amendments to SORA require timely revisiting of the holding of *Ward*). Thus, a disruptive state Ex Post Facto ruling from this Court could increase friction between the federal and Tennessee courts and encroach on state jurisdiction. On balance, the Court concludes that the *Grand Trunk* factors favor declining jurisdiction over Plaintiff's DJA claim based on the Ex Post Facto Clause of the Tennessee Constitution.[5] This claim will therefore be dismissed without prejudice for lack of subject-matter jurisdiction.

4. Attorney's Fees

Finally, Plaintiff requests attorney's fees under 42 U.S.C. § 1988. (*See* Doc. No. 1 at 1.) Section 1988 allows the award of "a reasonable attorney's fee" to a "prevailing party" in a Section 1983 suit. *Fox v. Vice*, 563 U.S. 826, 832-33 (2011). However, Plaintiff, proceeding pro se, is not entitled to attorney's fees under Section 1988 because he is not represented by an attorney. *See Kay v. Ehrler*, 900 F.2d 967, 969-70 (6th Cir. 1990) (explaining that pro se plaintiffs cannot recover attorney fees under Section 1988 for litigation of civil rights actions). Thus, the Court will deny Plaintiff's claim for attorney's fees without prejudice. *See Frady v. Cpl. Collins*, No. 3:15-

---

[5] The Court will also dismiss any purported claims against Defendants "John Doe" and "Jane Doe." The Plaintiff alleges no factual basis for relief against any unknown Defendant.

CV-399-TAV-CCS, 2016 WL 740446, at *4 (E.D. Tenn. Feb. 24, 2016) (dismissing request by pro se litigant for attorney's fees under Section 1988 at initial review).

## CONCLUSION

For these reasons, the Court concludes that Plaintiff has stated colorable official-capacity Section 1983 claims for prospective injunctive relief against Governor Lee and Director Rausch, asserting as-applied constitutional challenges based upon the Ex Post Facto Clause and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff's Section 1983 claims against the State of Tennessee and Governor Lee and Director Rausch in their official capacity for money damages, and Declaratory Judgement Act claim under the Tennessee Constitution, will be dismissed without prejudice for lack of subject-matter jurisdiction. All other claims will be dismissed with prejudice. Plaintiff's request for attorney's fees will be denied without prejudice. This case will be referred to the Magistrate Judge for further case management.

An appropriate Order will enter.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE