IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THOMAS NEWSOME,<br>    Plaintiff,<br><br>v.<br><br>WILLIAM B. LEE, et al.,<br>    Defendants. | )<br>)<br>)<br>)    Civil Action No. 3:21-cv-00041<br>)    Judge Richardson/Frensley<br>)<br>) |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION AND BACKGROUND

This matter is before the Court upon two Motions: the first, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 19); and the second, Plaintiff's Motion for Preliminary Injunction (Docket No. 21). For the reasons set forth herein, the undersigned recommends that the Motion to Dismiss be **DENIED** and that the Motion for Preliminary Injunction be **DENIED**.

    **A.**    **Defendants' Motion to Dismiss Plaintiff's First Amended Complaint**

Defendants' filed their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and supporting Memorandum of Law, arguing that: (1) Eleventh Amendment sovereign immunity deprives this Court of subject matter jurisdiction over Plaintiff's claims against the State of Tennessee; (2) Eleventh Amendment sovereign immunity deprives the Court of subject matter jurisdiction over Plaintiff's claims for money damages against the individual Defendants in their official capacities; (3) the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 ("SORA"), Tenn. Code Ann. §§ 40-39-201 through 40-39-218, as applied to Plaintiff, does not impose punishment in violation of the ex post facto clause; (4) Plaintiff does not allege sufficient facts to show that either Governor Lee or Director Rausch

were personally involved in violating his constitutional rights; and (5) Governor Lee is not a proper Defendant to this action. Docket Nos. 19, 20.[1]

Plaintiff has filed a Response opposing Defendants' Motion. Docket No. 23. In his Response, Plaintiff lists numerous case citations which he argues discuss "as applied" *ex post facto* challenges to the sex offender registration laws of various states. *Id.* Plaintiff argues that his allegations demonstrate a sufficient punitive impact on him to support his "as applied" challenge because "SORA has disrupted Plaintiff's ability to find housing, obtain a replacement job for the one that was denied, and travel." *Id.*

Plaintiff responds that his injuries stem from the registration requirement because the label of "Violent Sex Offender" is a global declaration about who he is today, "it declares to the public that now—right now—Plaintiff is dangerous." *Id.* Plaintiff contends that by "merely not informing the public about Plaintiff's 1985 conviction that he was found guilty in front of a Davidson County Criminal Court allows people to reach their own conclusions about who [he is today] and whether he is dangerous." *Id.*

Plaintiff asserts that Defendants "made a conscious, deliberate policy choice to proactively enforce SORA over the course of at least the past ten years, if not longer. Specifically, Metro created a series of specialized units to enforce SORA, celebrated that unit's volume of arrests and prosecutions for SORA violations, and proactively cooperated with the Tennessee Bureau of Investigation ("TBI") to, *e.g.*, make registered sex offenders stay home on Halloween. Given these readily ascertainable proactive enforcement measures, identified through internet searches, it is extremely likely that Metro has made myriad other [*sic*] deliberate policy choices over the past fifteen years to proactively enforce SORA without regard to offenders' *ex post facto* rights." *Id.*

---

[1] All served Defendants are parties to this Motion.

(internal citations omitted).

Plaintiff argues that "the only mandatory state policy is for Metro to cooperate in the quarterly and annual registration of offenders. T.C.A. §40-39-204. Otherwise, Metro's enforcement policies are discretionary." *Id.* Plaintiff continues, "there is nothing in state law that requires Metro to go out of its way to arrest and prosecute alleged SORA violators, and nothing that requires Metro to send detectives out to SORA registrants' homes to make sure that they are still residing at their registered addresses." *Id.*

Plaintiff further argues that Defendants "knew that this law was unconstitutional as applied to" him because the previous Director of the TBI and Governor of Tennessee were named in a 2016 lawsuit challenging the retroactive enforcement of provisions of the Act. *Id.* Plaintiff contends in his Response that there are statistical disparities that demonstrate "widespread, systemic racial bias," that his request to be removed from the registry was denied, and that "the Governor has a duty to enforce the state laws and the constitution." *Id.*

Defendants have filed a Reply to Plaintiff's Response. Docket No. 24. In it, Defendants Reply that "not one of the cases cited [by Plaintiff in his Response] is binding precedent in this case." *Id.* Defendants further reply that they continue to assert that an "as applied" challenge requires the challenging party to plead and prove facts sufficient to show that a statute is unconstitutional "as applied" to him. *Id., citing Women's Med. Prof. Cor/ v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997). Defendants note that, although the First Amended Complaint contains allegations regarding housing, it does not contain any specific, factual allegations regarding travel or employment. *Id.* As to the allegations regarding housing, Defendants argue that Plaintiff has not pleaded facts sufficient to show that the law is unconstitutional as applied to him. *Id.*

To the extent that Plaintiff alleges individual capacity claims, Defendants reply that

3

Plaintiff has failed to allege that they had direct involvement in activities that caused the alleged constitutional deprivation, and that absent such, he cannot sustain this claim. *Id.* Defendants note that Plaintiff's Response contains allegations that were not present in his First Amended Complaint, and they assert that these additional "arguments amount at most to allegations that Governor Lee and Director Rausch 'hold attenuated supervisory positions over those charged with implementing' the Act—which, as this Court previously ruled in this case, is insufficient to state a claim for relief." *Id., citing* Docket No. 7.

      **B.**      **Plaintiff's Motion for Preliminary Injunction**

Plaintiff has filed a Motion for Preliminary Injunction and supporting Memorandum of Law. Docket Nos. 21, 22. Plaintiff seeks injunctive relief prohibiting Defendants from continuing to enforce SORA against him because it did not exist at the time of his conviction and therefore is being applied to him *ex post facto*. *Id.* Plaintiff argues that Defendants' continued enforcement of SORA imposes ongoing damage to his economic life, liberty, and reputation. *Id.* Plaintiff maintains that he has been denied housing, employment, and recreation because of his registry status, and "must constantly comply with the full panoply of registry requirement[s] on pain of arrest, incarceration, and felony prosecution." *Id.*

Defendants filed their Response, arguing that Plaintiff cannot carry his burden of proving that the circumstances clearly demand the extraordinary relief that a preliminary injunction affords. Docket No. 25. Specifically, Defendants argue that Plaintiff has not demonstrated a likelihood of success as a legal matter on his "as applied" *Ex Post Facto* claim because the United States Supreme Court has held that the maintenance of a sexual offender registry that includes offenders whose crimes were committed prior to the adoption of the registry does not, standing alone, violate the *Ex Post Facto* Clause (*Smith v. Doe*, 538 U. S. 84, 92 (2003), and the Sixth Circuit has held

4

that Tennessee's SORA constitutes a civil regulatory scheme and does not violate the *Ex Post Facto* Clause (*Doe v. Bredesen*, 507 F.3d 998, 1000 (6th Cir. 2007). Additionally, Defendants argue that Plaintiff cannot prevail because his allegations about SORA's effects, as applied to him, do not demonstrate that SORA is punitive as applied to him. *Id.* Defendants further argue that Plaintiff cannot prevail because his six-month delay in filing this motion demonstrates that he is not "facing imminent and irreparable injury." *Id.* Finally, Defendants argue that the State's interest in protecting the public weighs heavily against removing Plaintiff from the Sex Offender Registry. *Id.*

Plaintiff, *pro se*, filed this action pursuant to 42 U. S.C. 1983, alleging that Defendants "have violated and continue to violate Plaintiff's Constitutional right against ex post facto punishment through retroactive imposition on him" of SORA. Docket No. 15. Plaintiff argues that, as applied to him, SORA constitutes "punishment" within the meaning of the *ex post facto* clause of Article 1, § 10 of the United States Constitution. *Id.* Plaintiff avers that Defendants Lee and Rausch are "proper official capacity defendants because they both have roles in enforcing Tennessee's SORA regime"; and Defendant Rausch is a "proper personal capacity defendant because he personally directs the enforcement of SORA under color of state law." *Id.* Plaintiff further avers that Metro has a policy and practice of choosing to enforce SORA through proactive enforcement measures, including by having officers "show up at registered offender's [*sic*] residences without warning to inspect the premises and verify residence" – without excepting those offenders whose sex offenses predate Tennessee's enactment of the SORA laws. *Id.* Plaintiff seeks declaratory and injunctive relief, "nominal and compensatory damages against Defendants' State of Tennessee and Metro," as well as "money damages for his claims against the individual Defendants in their personal and official capacities." *Id.*

## II. FACTUAL ALLEGATIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

In 1984, Plaintiff was convicted of aggravated rape. Docket No. 15, ¶ 7. Plaintiff was sentenced to 55 years. *Id.,* ¶ 9. Plaintiff's criminal case judgment did not impose any special sex offender conditions. *Id.,* ¶ 11. Plaintiff served his sentence in the Tennessee Department of Correction ("TDOC"). *Id.,* ¶ 12.

At the time that Plaintiff committed this offense, Tennessee did not have SORA. *Id.,* ¶ 8. At the time that Plaintiff was convicted of this offense, Tennessee did not have SORA. *Id.,* ¶ 10.

In 1994, Tennessee passed SORA. *Id.,* ¶ 13. However, that law required only those persons deemed sex offenders be registered in a private law enforcement database. *Id.* Since then, Tennessee has repeatedly added to its SORA regime. *Id.,* ¶ 14. Tennessee's current SORA, Tenn. Code Ann. §40-39-201, *et seq.*, requires quarterly registration with local law enforcement; payment of quarterly registration and monitoring fees; re-registration within 10 days if the offender relocates to a new municipality or county; and always carry state-issued identification that has a "violent sex offender" designation. *Id.,* ¶¶ 15, 17. Tennessee's current SORA also makes certain offender identifying information public and places certain restrictions and prohibitions on offenders. *Id.,* ¶¶ 18, 19. Tennessee's current SORA also authorizes that public libraries may ban offenders from their premises; municipalities may implement a community notification system; and a municipality may charge a resident offender up to $50 per year toward the cost of its community notification system. *Id.;* ¶ 20. Under the current SORA, offenders are registered for life. *Id.,* ¶ 21.

After Tennessee established its SORA, the Metro Nashville Police Department ("MNPD") assigned its Sex Crimes Unit the responsibility of maintaining the Sex Offender Registry, which includes offender registration, offender compliance, and coordination of enforcement actions. *Id.,*

¶¶22, 24. By 2018, MNPD had created a separate Sex Offender Registry Unit. *Id.*, ¶ 26.

In 2019, Plaintiff was granted parole. *Id.*, ¶ 31. Just prior to Plaintiff's release from TDOC, Plaintiff was informed that he would have to register as a "violent sex offender" because of the SORA that Tennessee had enacted. *Id.*, ¶ 32.

Plaintiff has made several attempts to obtain his own apartment, but each apartment company to which he has applied has denied him, explaining that the denial is because Plaintiff is on the sex offender registry. *Id.*, ¶ 34.

Every March, June, September, and December, Plaintiff must spend half a day going to MNPD to get booked and update his registration paperwork. *Id.*, ¶¶ 36, 37. Plaintiff must pay $150 per year for his registration and monitoring fees. *Id.*, ¶ 35. Any time Plaintiff moves, he must report his address within 10 days. *Id.*, ¶ 38. At least once per month, Tennessee Department of Parole Officers randomly come to Plaintiff's residence to confirm that Plaintiff lives there. *Id.*, ¶ 39. Plaintiff's driver's license contains the words "Violent Sex Offender," and the Tennessee Bureau of Investigation ("TBI") public sex offender registry website clarifies Plaintiff as "Violent." *Id.*, ¶¶ 40, 41.

## III. LAW AND ANALYSIS

### A. Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

Defendants assert Fed. R. Civ. P. 12(b)(1) and 12(b)(6) as grounds for their Motion to Dismiss. Docket No. 19. Fed. R. Civ. P. 12(b)(1) provides that a complaint may be dismissed for lack of subject matter jurisdiction, while Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. The Court will focus on

the Rule 12(b)(6) Motion.[2]

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

The United States Supreme Court addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

---

[2] A dismissal for failure to state a claim upon which relief can be granted is a dismissal on the merits. *See Federated Dept. Stores, Inc., v. Moitie*, 452 U. S. 394, 399 n. 3 (1981); *Pratt v. Ventas, Inc.*, 365 F. 3d 514, 522 (6th Cir. 2004). It is therefore unnecessary for the Court to discuss Defendants' arguments under Rule 12(b)(1).

129 S. Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

### B. Eleventh Amendment Immunity

Regarding a state's sovereign immunity under the Eleventh Amendment, the Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U. S. Const. amend. XI.

The Supreme Court has construed the Eleventh Amendment and/or the related concept of sovereign immunity to also bar actions by citizens alleging violations of federal law against their own states in federal or state court. *See Alden v. Maine,* 527 U. S. 706 (1999); *Seminole Tribe of Florida v. Florida*, 517 U. S. 44 (1996); *Edelman v. Jordan*, 415 U. S. 651, 662-63 (1974); *Hans v. Louisiana*, 131 U. S. 1 (1890). The Supreme Court has also held that sovereign immunity bars citizen suits against states in federal court for violations of state law. *Pennhurst State School and Hospital v. Halderman*, 465 U. S. 89 (1984). Moreover, the Court has recognized that the "sovereign immunity" of the States is a concept "inherent" in the Constitution and that it is not limited by the language of the Eleventh Amendment. *See Alden*, 527 U. S. at 728-29.

There are two main exceptions to sovereign immunity. First, Congress can abrogate a state's sovereign immunity by passing appropriate legislation pursuant to Section 5 of the Fourteenth Amendment. *See Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U. S. 96, 101 (1989). Second, a state may waive its immunity from suit. *See Pennhurst*, 465 U. S. at 99-100. Federal courts cannot assume that a state has waived its sovereign immunity unless the state has explicitly done so, or there are "such overwhelming implications from the text [of a statute] as

9

[to] leave room no room for any other reasonable construction." *Edelman*, 415 U. S. at 673. *See also, Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002).

### C. 42 U. S.C. § 1983

#### 1. Generally

Plaintiff alleges violations of his rights pursuant to 42 U. S.C. § 1983. *See* Docket No. 15. § 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U. S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U. S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U. S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U. S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U. S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

#### 2. Claims Against the State of Tennessee

The law is well-settled that a state is not a "person" within the meaning of §1983. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U. S. 58, 71 (1989); *Clark v. Kentucky*, 229 F. Supp.

10

2d 718, 722 (E.D. Ky. 2002).

### 3. Official Capacity Claims

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F. 3d 350, 355 n. 4 (6th Cir. 2000), *citing Kentucky v. Graham*, 473 U. S. 159, 165 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*.

### 4. Individual Capacity Claims

As an initial matter, §1983 liability cannot be predicated upon the theory of *respondeat superior*. *Polk County v. Dodson*, 454 U. S. 312, 325 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U. S. 658, 694 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996). In order for Defendants to be held liable in their individual capacities, therefore, Plaintiff must demonstrate that the individual Defendants personally condoned, encouraged, or participated in the conduct that allegedly violated Plaintiff's rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984), *citing Hays v. Jefferson County,* 668 F. 2d 869, 872-74 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U. S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U. S. 871, 888 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

### D. Defendants' Motion to Dismiss

#### 1. Sovereign Immunity, Money Damages and Individual Capacity Claims

On initial review, this Court found that "Plaintiff's Section 1983 claims against the State of Tennessee, Governor Lee and Director Rausch in their official capacity for money damages and Declaratory Judgment Act claim under the Tennessee Constitution will be dismissed . . . . ." Docket No. 7. The Plaintiff's individual capacity Section 1983 against Governor Lee and Director Rausch were dismissed for failure to state a claim. *Id.* at pp. 8-9. The Court has reviewed the Plaintiff's First Amended Complaint, nothing in which changes or requires additional consideration of the Court's ruling on initial review. These claims remain dismissed.

#### 2. Plaintiff's Ex Post Facto Claim and Official Capacity Claim Against Defendant Lee

The Defendants argue that Plaintiff's challenge based upon the ex post facto clause and official capacity claim under Section 1983 for prospective injunctive relief against Governor Lee should be dismissed. The Court disagrees.

As an initial matter, as noted in the Court's ruling on initial review, much of the Complaint in this matter appears to be copied from the Complaint in a similar case pending before Chief Judge Crenshaw, *Brown v. Lee*, 3:20-cv-916 (Docket No. 1)(Docket No. 7, p. 3). Upon closed inspection, except for the specific factual allegations regarding the Plaintiff's convictions and release to parole, the Complaints, Amended Complaints, Motions for Preliminary Injunction and Responses to the Defendants' Motions to Dismiss are virtually identical. Likewise, the same arguments are asserted by the Defendants in both this case and *Brown* in support of their motions to dismiss.

On January 19, 2022, Magistrate Judge Holmes entered a Report and Recommendation addressing the same issues raised in the instant motion to dismiss. *Brown*, 3:20-cv-00916, Docket

No. 32. As was the case on initial review, the Court adopts and applies the reasoning of Magistrate Judge Holmes in *Brown* as follows:

> Article I of the United States Constitution prohibits a State from passing "ex post facto Laws." U. S. Const., Art. I, § 10, cl.1. In its most straightforward formulation, the Ex Post Facto Clause dictates that "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U. S. 37, 43 (1990). The breadth of the protection of the Ex Post Facto Clause, however, is not limited to its most straightforward application, and it is well settled that its protection applies to more than just express changes to the particular statutory sentence or definition associated with an offense. *Peugh v. United States*, 569 U. S. 530, 539 (2013) (noting that the Supreme Court has "never accepted the proposition that a law must increase the maximum sentence for which a defendant is eligible in order to violate the Ex Post Facto Clause.") (citing *Lindsey v. Washington*, 301 U. S. 397 (1937)). For that reason, some statutory provisions that do not impact the sentence or definition of a crime may have a sufficiently detrimental and disadvantageous impact upon an offender that the provisions fall within the scope of the Ex Post Facto Clause.
>
> In this context, courts have grappled whether the Ex Post Facto Clause prohibits the application of registration and monitoring laws to sexual offenders whose convictions occurred prior to enactment of such laws. *See Smith v. Doe*, 538 U. S. 84 (2003) (upholding Alaska's sexual offender registration law); *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016) (finding that Michigan's sexual offender registration law violated Ex Post Facto Clause). Relevant to the case at hand, the Sixth Circuit has twice upheld Tennessee's sexual offender registration and monitoring laws against Ex Post Facto challenges in *Cutshall v. Sundquist*, 193 F. 3d 466, 476-77 (6th Cir. 1999), and *Doe v. Bredesen*, 507 F. 3d 998 (6th Cir. 2007). However, both decisions dealt with previous versions of the Tennessee sexual offender registration law and not with the current version that applies to Plaintiff and is at issue in this case.
>
> While the Sixth Circuit has not yet had the occasion to review the current SORA, lower courts have conducted such reviews and have found (1) that *Doe v. Bredesen* does not control such review because the SORA has been amended in meaningful respects several times subsequent to the decision in *Doe v Bredesen* and (2) that the current version of the SORA, with its new and increased mandates and prohibitions, violates the Ex Post Facto Clause when analyzed under the "intent-effects" test that is applicable. *See Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 1204 (M.D. Tenn. 2021) (upon summary judgment motion, the court found the

13

> SORA to violate the Ex Post Facto Clause); *Doe v. Rausch*, 461 F. Supp. 3d 747, 769 (E.D. Tenn. 2020) (same); *Doe v. Rausch*, 382 F. Supp. 3d 783, 788 (E.D. Tenn. 2019) (same).
>
> Furthermore, several courts have reviewed and denied motions to dismiss brought in cases raising Ex Post Facto challenges to the SORA, These courts found no merit in requests by the defendants for Rule 12(b)(6) dismissals in the face of "as applied" challenges supported by allegations in the pleadings of disadvantageous restrictions and consequences on the plaintiffs caused by the SORA. *See Doe v. Lee*, 2021 WL 1907813, at *13 (M.D. Tenn. May 12, 2021) (Trauger, J); *Reid v. Lee*, 476 F. Supp. 3d 684, 706 (M.D. Tenn. 2020); *Jackson v. Rausch*, 2020 WL 7496528, at *4 (E.D. Tenn. Dec. 21, 2020); *Jordan v. William*, 2020 WL 4676477, at *18 (M.D. Tenn. Aug. 12, 2020) (Trauger, J.); *Doe v. Gwyn*, 2018 WL 1957788 (E.D. Tenn. Apr. 25, 2018); *Doe v. Haslam*, 2017 WL 5187117, at *19 (M.D. Tenn. November 9, 2017); *Doe v. Haslam*, 2017 WL 4782853, at *6 (E.D. Tenn. Oct. 23, 2017).

*Brown v. Lee*, 3:20-cv-916, Docket No. 32, pp 7-9, n. 4.

As in *Brown,* nothing about the instant case significantly distinguishes it from those cases at this point in the proceedings. Plaintiff alleges that his conviction occurred prior to SORA becoming law, that the law will apply to him for the rest of his life, and that his request to be removed from the registry has been denied. He further articulates that he has suffered numerous specific and ongoing injuries to his ability to live as a result of being placed on the registry and comply with the requirements of the law.

As in Brown, based on the allegations in the Plaintiff's pleadings the Court cannot reach a conclusion as to whether those effects are punitive and therefore cannot conclude that the act is non-punitive as a matter of law. Taking the allegations of the Plaintiff's pleading as true, he has alleged at least a plausible claim that the present version of SORA is punitive in effect as to violate the Ex Post Facto Clause. Defendants request to dismiss this claim for failure to state a claim for relief should therefore be **DENIED**.

The final argument advanced in Defendants' motion is that Defendant Lee is not a proper Defendant to this action. Docket No. 20, pp. 5-6. In support of his motion, Defendant Lee asserts

the identical argument addressed by Magistrate Judge Holmes in *Brown*. The Defendant argues that Plaintiff has failed to allege any enforcement of the Act or attempt to enforce the Act by Defendant Lee and therefore his allegations fail to state a claim against the Defendant. Docket No. 20, p. 5. As in *Brown*, Defendant Lee references a case from the Eastern District of Tennessee that supports his position but offers no argument as to why the Court should not follow the analysis in *Doe v. Haslam* where this Court rejected this same argument raised by Defendant Lee's predecessor as governor. *See Doe v. Haslam*, 2017 WL 5187117, at *9. Defendant Lee notes that even if the Plaintiff's claims against Defendant Lee are dismissed on immunity grounds, "this does not stop Plaintiff's claims against Direct Rausch. Therefore, the governor should be dismissed as a party to this case." *Id.* at p. 6. This Court agrees with the reasoning of Magistrate Judge Holmes in light of the conflicting authority and Defendant Lee's failure to refer to and address this Court's ruling on the issue in *Doe v. Haslam*, the Motion to Dismiss should be **DENIED** as to this argument.

        **C.**      **Motion for Preliminary Inunction**

Also pending before the Court is Plaintiff's Motion for Preliminary Injunction. Docket No. 21. In this motion, the Plaintiff seeks to prohibit the Defendants from continuing to enforce the SORA because the SORA imposes mandates and prohibitions on him that are damaging and in violation of the *Ex Post Facto Clause* resulting in irreparable harm to him. Docket No. 22. While the motion states that he relies upon "attached exhibits" and his "verified complaint" no exhibits were filed in support of the motion nor is the first amended complaint a verified complaint. The Defendants oppose his motion arguing primarily that there is no likelihood of success on the merits of his claims, that he does not face irreparable harm and that the public interest is best served by continuing to enforce the requirements of the statute. Docket No. 25.

15

Case 3:21-cv-00041   Document 26   Filed 02/04/22   Page 15 of 18 PageID #: 167

The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial of the merits can be had. *Certified Restoration Dry Clean Network, LLC v. Tenke Corp.*, 511 F. 3d 535, 542 (6th Cir. 2007)(citations omitted). The decision as to whether to issue a preliminary injunction is committed to the trial court's discretion. *N. E. Ohio Coal v. Blackwell*, 467 F. 3d 999, 1009 (6th Cir. 2006)(*Patio Enclosures Inc. v. Herbst*, 39 Fed. Appx. 964, 967 (6th Cir. 2002). Preliminary injunction is an extraordinary remedy to be applied only in the limited circumstances which clearly demand it. *Leary v. Daeschner*, 228 F. 3d 729, 739 (6th Cir. 2000).

The moving party has the burden of proving that the circumstances "clearly demand" a Preliminary Injunction. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't.*, 305 F. 3d 566, 573 (6th Cir. 2002). The court must balance four factors in deciding whether to issue a preliminary injunction "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retied Employees Ass'n. v. Schimmel*, 751 F. 3d 427, 430 (6th Cir. 2014)(*en banc*)(internal quotation marks omitted).

These four factors are "factors to be balanced, not prerequisites that must be met." *Michael v. Futhey*, 2009 WL 4981688, at *17 (6th Cir., December 17, 2009)(quoting *Six Clinics Holding Corp., II v. Cafcomp Systems*, 119 F. 3d 393, 400 (6th Cir. 1997)). Nonetheless, it remains that the hallmark of injunctive relief is the likelihood of irreparable harm. *Patio Enclosures, Inc. v. Herbst*, 39 Fed. Appx. 964, 967 (6th Cir. 2002)("[t]he demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction."); see also *Winter v. Natural Resources Defense Council, Inc.,* 555 U. S. 7, 22-23, 129 S. Ct. 365, 172 L. Ed 2d 249 (2008)(rejecting the notion that a mere "possibility" of irreparable injury was sufficient for a preliminary injunction and holding that

"plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is *likely* in the absence of an injunction")(emphasis in original). "A finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzalez v. National Board of Medical Examiners*, 225 F. 3d 620, 625 (6th Cir. 2000).

The Plaintiff has failed to meet his burden of establishing that a preliminary injunction should be granted. Specifically, Plaintiff's motion is unsupported by any evidence as noted above, Plaintiff has not filed any supporting exhibits or other evidence in support of his motion nor has he filed his affidavit or declaration. The allegations from the Amended Complaint, while sufficient to state a claim for relief that defeats the Defendants' motion to dismiss, are insufficient to support a claim for preliminary injunction.[3] A request to enjoin enforcement of a statute must be supported by actual evidence that adds substance and detail to the allegations made by Plaintiff about the impact of the SORA on his situation. In the absence of this type of evidence in the record, there is nothing upon which the Court can make the necessary determinations required for the issuance of a preliminary injunction. Therefore, Plaintiff's motion for preliminary injunction should be **DENIED**.

### IV. CONCLUSION

For the reasons set forth herein, the undersigned recommends that the Defendants' Motion to Dismiss (Docket No. 19) be **DENIED** and the Plaintiff's Motions for Preliminary Injunction (Docket No. 21) be **DENIED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days

---

[3] While the Plaintiff's original Complaint included a statement it was filed under penalty of perjury, Plaintiff's Amended Complaint is the operative pleading in his case and is not similarly filed as a verified Complaint. The Court does not view the original Complaint as placing evidence in the record that supports the allegations of the Amended Complaint and thus the Motion for Preliminary Inunction.

after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U. S. 140, 106 S. Ct. 466, 88 Ls. Ed. 2d 435 (1985), *reh'g denied*, 474 U. S. 1111 (1986); 28 U. S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**